FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

99 JAN 29 PM 4: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| SUSAN B. DAVIS, on behalf of herself and a class of persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV 98-BU-1353-S |
| CHASE MANHATTAN MORTGAGE CORPORATION f/k/a MARGARETTEN & COMPANY, INC., | ) ) ) ) ) ) | |
| Defendant. | ) | |

ENTERED

JAN 29 1999

Memorandum Opinion

This cause comes on to be heard on a motion to remand filed by the plaintiff, Susan B. Davis ("Davis"), on June 2, 1998. The plaintiff contends that the district court does not have diversity jurisdiction over the instant case because the matter in controversy in her claims and the claims of the putative class members cannot be individually valued at greater that $75,000.00. The defendant, Chase Manhattan Mortgage Corporation ("CMMC"), contends that because the plaintiff is asserting an unjust enrichment claim on behalf of the putative class, any recovery on that claim should be treated as a single aggregate matter in controversy. Also, CMMC asserts,

1

the plaintiff cannot limit the punitive and compensatory recovery of the individual putative class members.

In resolving the issues pertaining to removal and remand, the court first notes certain precepts that are well-established in this circuit:

> ... On a motion to remand, the removing party bears the burden of establishing jurisdiction. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). The removal statute should be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 [] (1941).

*Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

## Facts

The plaintiff purchased a home financed by a mortgage with AmSouth Mortgage Company and insured by the Department of Housing and Urban Development ("HUD"). CMMC began to service Davis' loan on October 21, 1994 on behalf of HUD, after the plaintiff fell into severe default; as of that date, the plaintiff's loan was only paid to March, 1993. The defendant managed to collect some of the amount of the loan from the plaintiff; however, apparently, the last payment CMMC received from Davis was in July of 1995, and this payment was applied to her September, 1993 payment. As a consequence of her inability to pay her mortgage, CMMC instituted foreclosure proceedings and Davis' property was sold at a foreclosure sale on November 15, 1995.

Davis alleges that CMMC charged a property inspection fee for each and every month that she did not make the mortgage payment on or before the due date set forth in Note and Mortgage agreement and that CMMC rarely, if ever, performed the inspections for which it charged an inspection fee. Davis contends that by charging the fees, CMMC "suppressed from Plaintiff the material fact that such inspections were not necessary to preserve or maintain Defendant's security interest in the property and further, suppressed the fact that such inspections or fees are not contemplated in or provided for pursuant to the terms of the Note and Mortgage agreement between the parties." The plaintiff filed a complaint on April 21, 1998, in which she asserted claims for suppression, theft by deception, unjust enrichment, based on the alleged

wrongful charging of property inspection fees.

## Contentions & Analysis

The plaintiff contends that no diversity of citizenship exists in the instant action. As the court stated in *Glover v. Midland Mortgage Company of Oklahoma, Inc.*, — F. Supp. 2d. —, —, 1998 WL 887138 at * 2:

> The general removal statute, 28 U.S.C. § 1441(a), permits a defendant to remove from state to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." In the instant case, it was determined that the court had original jurisdiction over the action based on diversity of citizenship. The requirements of diversity jurisdiction under 28 U.S.C. § 1332(a)(1) are, first, complete diversity of state or foreign citizenship between the plaintiffs and all defendants (*see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806) and *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)) and satisfaction of the present statutory amount in controversy requirement of over "$75,000.00, exclusive of interest and costs."

The amount in controversy requirement has existed since the Judiciary Act of 1789, which included a $500.00 requirement for actions grounded in diversity of citizenship. 1 Stat. 73, 78. At present, this amount is $75,000.00. A plaintiff choosing not to enter the doors of the federal courthouse may underplead the amount in damages that she seeks or neglect to demand any amount at all. Being the master of her complaint, the plaintiff is generally free to choose whether or not to plead in excess of the amount in controversy and thereby choose her court. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *St. Paul's Indemnity Corp. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

"Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d at 1092. Therefore, where the plaintiff fails to state an amount in controversy, the defendant must demonstrate by a preponderance of the evidence that the actual amount in controversy exceeds $75,000.00. *Tapscott v. MS Dealer*

*Service Corp.*, 77 F.3d at 1357. When the plaintiff has calculated a limit on the relief sought, the defendant must prove to a legal certainty "that opposing counsel is falsely assessing the case or is incompetently doing so," or what is equivalent, "that plaintiff's claim must exceed [the amount in controversy]." *Burns v. Windsor Ins. Co.*, 31 F.3d at 1095.

The plaintiff, in counts one, two and three of its complaint, limits the value of each named and putative class plaintiff's claims to $74,000.00. The complaint concludes with an express total limitation of $75,000.00 on all damages recoverable by each plaintiff. The limitation, calculated as it is to fall just below the amount in controversy required for diversity jurisdiction, is an obvious effort to avoid the subject matter jurisdiction of a federal court, rather than a pure attempt to discern and present the value of the plaintiff's claims. Nonetheless, the defendant must demonstrate, to the relevant burden, that the plaintiff's claims will exceed the amount stated. *Cf. Iowa City Ry. v. Bacon*, 236 U.S. 305 (1915) (permitting plaintiff to limit the value of a case to below the amount in controversy although plaintiff's damages were in excess of that amount).

Under Alabama law, as with federal law, the amount of damages pled in the complaint will not limit the recovery of the plaintiffs to the amount pled. *Fuller v. Preffered Risk Life Ins. Co.*, 577 So.2d 878, 883-84 (Ala. 1991); *Suter v. Arrowhead Inv. Co., Ltd.*, 387 So.2d 815, 818 (Ala. 1980). In some sense, then, it is irrelevant what damages the plaintiff pleads, except insofar as the amount pled relates to the matter in controversy requirement of diversity jurisdiction. Despite this, where, as here, plaintiffs have placed an express limitation on the value of their claims, the defendants must prove to a legal certainty that more than $75,000.00 will be recovered by all plaintiffs. Although the plaintiff admits that the parties are diverse in citizenship, she contends that the matter in controversy is not worth greater than $75,000.00. The defendant disputes this stating that the matter in controversy exceeds $75,000.00 in the instant action (1) because the plaintiff's unjust enrichment claim, brought on behalf of the putative class is a single aggregate matter in controversy and (2) because the plaintiff is unable to limit punitive and compensatory damages to beneath $75,000.01.

THE DIVISIBILITY OF AN UNJUST ENRICHMENT CLAIM.

4

The defendants contend that the putative class plaintiffs' claims for unjust enrichment against the CMMC is, in fact, a single claim in which the class members would have a common and undivided interest. This is so, the defendant argues, because the purpose of the unjust enrichment claim(s) in this suit is not to compensate each individual plaintiff but to disgorge from the bank defendants any unjust benefits that they have already acquired. According to the defendants, under Alabama law, the sole purpose of ordering restitution in an unjust enrichment action is to "forc[e] a defendant to return benefits that it would be unjust to allow the defendant to keep[,]" not "to compensate the plaintiff." *Ex parte AmSouth Mortgage Co.*, 679 So.2d 251, 255 (Ala. 1996). Rather than being obligated for the amount of a plaintiff's loss, the defendant is liable for the unjust benefit he has received. *Opelika Production Credit Ass'n v. Lamb*, 361 So.2d 95, 99 (Ala. 1978). The defendants reason that restitution in a unjust enrichment claim is, therefore, akin to punitive damages under *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) and should be treated as a "common and undivided" award.[1]

The court will not recount the history of the aggregate matters in controversy, having done so previously in *Glover v. Midland Mortgage Company of Oklahoma, Inc.*, — F. Supp. 2d. at —, 1998 WL 887138 at * . Instead, the court will note only that aggregation of a matter in controversy is appropriate only in limited situations, where the parties assert a common and undivided right. *Id.* The analysis of whether a group of plaintiffs sue under a common and undivided right, the Eleventh Circuit Court of Appeals stated in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d at 1358-59, is based on the following factors: (1) whether the damage sought is for the common good or benefit; (2) whether the defendant has no interest in the division of the relief from the action; (3) whether the parties bring suit under a single right or title, or on behalf of a single entity; and (4) whether the action is premised on the defendant's conduct as a whole as opposed to each individual plaintiff.

CMMC seeks to use the *Tapscott* parasol to cover the unjust enrichment claim(s) asserted by the putative class in the instant case. The argument presented by the defendant for treating

---

[1] The plaintiffs have not limited the value of any allegedly aggregate claims and, therefore, the defendants must only prove by a preponderance of the evidence that the value of an aggregate claim surpasses $75,000.00.

claims of unjust enrichment as aggregable derives largely from a statement in *Ex part AmSouth Mortgage Co.*, 679 So.2d 251, 255 (Ala. 1996), that "[t]he law of restitution was created with the purpose and design of forcing a defendant to return benefits that it would be unjust to allow the defendant to keep; the law of restitution is not intended to compensate plaintiff." From this statement, the defendant infers a great deal. First, it asserts, the purpose of an unjust enrichment claim is to cause a defendant to give up a benefit wrongly procured, not because of any harm to the plaintiff, but instead to protect society — by depriving the defendant of wrongfully retained gains and deterring the defendant and others from similar conduct. Second, the defendant avers that the amount of damages is due to be calculated from the perspective of the entire amount of the unjust benefit held by it. Finally, the defendant states, such benefits would be disgorged as a common fund in which the defendants would have no interest in the allocation among plaintiffs.

The putative class of plaintiffs' claims against defendant for unjust enrichment arise from the alleged payments made by *each* individual plaintiff to CMMC as a consequence of attempts by it to charge a property inspection fee. Therefore, the calculation of any benefit accruing to CMMC from payments improperly made to them by the putative class plaintiffs will be done on a claim-by-claim basis, rather than being calculated on the basis of some *a priori* indivisible amount held by the defendant.[2] Nor can the defendants remain neutral toward an apportionment

---

[2] Also see *Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Contrete Work on All Construction, Hod Carriers', Building and Common Laborers' Local Union No. 17 v. Mason & Hanger Co.*, 217 F.2d 687 (2$^d$ Cir. 1954), in which, after dismissal of the original complaint, the plaintiff union filed an amended complaint claiming damages in tort for unjust enrichment by the defendant on the basis of a bribe in the amount of $36,000.00. The plaintiff claimed the $36,000.00 as a common and undivided interest among itself and four hundred union workers permitting aggregation and entry into the federal courthouse. The Second Circuit Court of Appeals disagreed with the plaintiff, stating:

> Whether the parties be several, or one suing in a representative capacity on behalf of others, the amounts claimed by or on behalf of each of those injured by the wrongful conduct of defendant may be aggregated only where those 'having a common undivided interest, unite to enforce a single title or right'. *Thomson v. Gaskill*, 1942, 315 U.S. 442 []. And this is the established law even though the several claims are derived from a single instrument or arise as the result of a negligent or wrongful act which results in loss or damage to many persons. *Pinel v. Pinel*, 1916, 240 U.S. 594 []; *Clark v. Paul Gray, Inc.*, 1939, 306 U.S. 583 [].
> 
> While plaintiffs argues that the theory of the amended complaint, and the additional allegations therein contained, has changed the nature of the rights sought to be asserted in this case so that there is now 'a common undivided interest' and 'a single title or right,' the amended complaint shows clearly on its face that this is not so. . . . There is no fund. The claim remains one on behalf of 400 separate individuals for the damage suffered by each due to the alleged

6

of disgorged benefits in the instant case, as the amount of the total award will increase or decrease with the addition or subtraction of each class member and with the determination of how much each class member paid to CMMC. Unlike a claim to an award of punitive damages, there is no element of social justice to a restitution claim. In this case, the benefit is not unjust as against society as a whole, but as against the putative class plaintiffs, considered individually, who were encouraged to pay CMMC money to which it allegedly was not entitled.

Finally, as stated by the court in *Crawford v. American Bankers Ins. Co. of Florida*, 987 F. Supp. 1408, 1411-12 (M.D. Ala. 1997):

> Despite the theoretical construct of unjust enrichment, the award sought in Windsor still did not constitute a "single collective right in which the entire putative class has a common and undivided interest." [*Windsor v. Abbott Labs*, CV-97-A-376-E] at 10, citing to *Tapscott*, 77 F.3d at 1359. Instead, "each potential member of the putative class has a potential unjust enrichment claim to recover the value of the corresponding benefit gained by the Defendants." *Windsor* at 10. Because Defendants in Windsor could not show that there was a particular reason to have a fund-type award, the court would default to the "general rule that each member of the class would be entitled to recover that portion of the benefit conferred upon the Defendants that is related to the detriment suffered by the individual class member." *Id.* at 10.

The court will not aggregate the unjust enrichment claims.

COMPENSATORY AND PUNITIVE DAMAGES

The named plaintiff ostensibly waives, on behalf of herself and all class members, compensatory damages for greater than $75,000.00, and all punitive damages. To be an adequate representative, named plaintiff must "have no interests which are antagonistic to other members of the class. . . ." *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3$^d$ Cir. 1975). The waiver of compensatory damages presents between the named plaintiff and the class some degree of antagonism, in that the interests of class members, which may be to receive the full

---

> tortious conduct of defendant in entering into the alleged conspiracy with Bove and paying him the bribe of $36,000.

*Id.* at 695. The argument for aggregation of claims of the putative class of plaintiffs made here is even weaker than that presented in *Mason & Hanger Co.* In that case, there was at least a *single event* on which all claims hinged. Here, any benefits which have accrued to CMMC have been as a result of discrete, individuated transactions by each putative class plaintiff. Any restitution awarded will, therefore, be likely calculated on the basis of the sum of the individuated benefits that are held by the defendant.

7

recompense to which they are entitled, will run headlong into the named plaintiffs' interest (or that of their attorneys) in keeping the instant case in state court. Arguably, in the absence of a waiver, some plaintiffs may have claims exceeding $75,000.00, considering the compensatory damages. However, because there is no automatic entitlement to punitive damages in any case — i.e., it is not requisite upon the jury to award punitive damages upon a finding of liability, the court will not conclude that a waiver of punitive damages is inadequate representation.

Even if the plaintiff cannot waive compensatory damages, the defendant has done nothing to show that any one putative plaintiff will have claims exceeding $75,000.00.

Conclusion

For the forgoing reasons, this action will be REMANDED to the Circuit Court of Jefferson County, Alabama, Bessemer Division.

DONE and ORDERED this 29th day of January 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE

8